Holly E. Lynch, WSBA #37281
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

The Honorable Stanley A. Bastian

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON AT SPOKANE

MICHELLE L. PUKI, as Personal Representative of the Estate of Lori Langton,

Plaintiff,

v.

OKANOGAN COUNTY; OKANOGAN BEHAVIORAL HEALTHCARE, a WA Nonprofit Corporation; DAVID KOPP, M.A. and JANE DOE KOPP, husband and wife and their marital community; M.O. MIRANDA EVANS J23; M.O. MITZY GREEN J11; C.D. CODY P. LUNN J19; C.D. RUSH J13; C.D. MIKE ADAMS J27; C.D. NOAH STEWART J1; C.D. TAPIA J20; C.D. ERIC KNAPP J6; JANE and JOHN DOES 1-30, and ABC CORPORATIONS 1-5,

Defendants.

Case No. 2:20-cv-00411-SAB

DEFENDANTS OKANOGAN BEHAVIORAL HEALTHCARE AND DAVID KOPP, M.A.'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: TORT CLAIMS

02/21/2024
Without Oral Argument

# I. INTRODUCTION AND RELIEF REQUESTED

Involuntary detention is "a profound deprivation of liberty" and the designated crisis responders ("DCRs") who have the authority to detain someone and force them undergo mental health treatment may only do so under "certain limited circumstances." *Matter of Detention of A.C.*, 1 Wn.3d 731, 735 (2023). Plaintiff's claims against DCR David Kopp and his employer Okanogan Behavioral Healthcare ("OBHC"), which arise out of Kopp's determination that he could not involuntarily commit Lori Langton, must be dismissed because Kopp and OBHC are statutorily immune from liability under Washington's Involuntary Treatment Act ("ITA"). 71.05.120(1). Moreover, Langton died from a medical condition – a pulmonary embolism – that Kopp could not have diagnosed or prevented. And neither OBHC nor Kopp owed Langton a duty under any recognized theory and even if they did, they did not cause her death.

# II. SUMMARY OF RELEVANT FACTS

## A. Kopp was a crisis responder and DCR at OBHC.

OBHC is a non-profit behavioral health organization that provides various mental health services in its community, including crisis services and ITA investigations. Statement of Undisputed Facts ("SOF") 1-2. Kopp was a member of OBHC's crisis team and was a DCR. As a member of the crisis team, he provided crisis interventions. SOF 8. As a DCR, he was authorized to conduct ITA investigations and if necessary, involuntarily commit individuals for forced mental

OKANOGAN BEHAVIORAL HEALTHCARE
AND DAVID KOPP'S MOTION FOR PARTIAL
SUMMARY JUDGMENT RE TORT CLAIMS - 1

health treatment.  SOF 3-4. This means he was authorized to detain individuals in certain limited circumstances:

> When a designated crisis responder receives information alleging that a person, <u>as a result of a behavioral health disorder, presents a likelihood of serious harm or is gravely disabled, the designated crisis responder <b>may</b></u>, after investigation and evaluation of the specific facts alleged and of the reliability and credibility of any person providing information to initiate detention, <u>if satisfied that the allegations are true and that the person will not voluntarily seek appropriate treatment</u>, <u>file a petition for initial detention under this section</u>….

RCW 71.05.150(1)(emphasis added); *see also* RCW 71.05.153(1) (emergency detainment); RCW 71.05.020(24) (defining grave disability).

**B.  Langton was not gravely disabled when Kopp saw her at Mid-Valley Hospital on March 23, 2018.**

On March 23, 2018, Lori Langton presented to Mid-Valley Hospital ("MVH") complaining of being anxious. SOF 26.  The hospital administered anti-anxiety medications, but Langton refused to leave. SOF 27-28. MVH called the local crisis line requesting a member of OBHC's crisis team come to MVH to speak with Langton and convince her to leave. SOF 28.

Kopp, received the call at approximately 5:15 p.m., which he documented:

> At 1715 rec'd call from BHR saying that MVH was requesting AC speak w/ ct, who was at the ER. TC to RN Cheryl, who said that earlier today ct called the ambulance to bring her to the ER so she could be given Benadryl. Once there, she refused to leave, saying she is safer at the hospital than at home. Ct told staff that her friends/caregivers were gone until Tuesday (this seemed related to ct feeling she needed to be in the hospital). Cheryl said ct was not voicing SI/HI so the hospital was not requesting a MH eval but instead hoping someone could come down to try to persuade ct to leave the hospital. Cheryl mentioned that ct was specifically asking for DMHP Lewis.

OKANOGAN BEHAVIORAL HEALTHCARE
AND DAVID KOPP'S MOTION FOR PARTIAL
SUMMARY JUDGMENT RE TORT CLAIMS - 2

SOF 29. MVH did not request an ITA investigation, rather, Kopp responded as a member of the crisis team. However, because he is a DCR, he still assessed whether the intervention needed to be escalated to an ITA investigation. SOF 29. Prior to going to the hospital, Kopp reviewed Langton's recent records,[1] spoke with an OBHC DCR who had involuntarily committed her in February 2018,[2] and talked to Langton's adult daughter. SOF 31. At the hospital Kopp met with hospital staff and spoke with and assessed Langton:

[1] Plaintiff alleges Kopp did not review Langton's records because his note from March 23 does not reference the review. Kopp testified that he did review Langton's records and no witness has testified to the contrary. But taking the facts in a light most favorable to plaintiff, it is undisputed that Kopp consulted with a provider with recent knowledge of Langton and spoke with Langton's daughter (whose identity and phone number he necessarily had to have gotten from Langton's records) prior to seeing her at MVH.

[2] On February 23, 2018, Langton was involuntarily committed for grave disability because she was hyper-manic, delusional, and had lost volitional control.

OKANOGAN BEHAVIORAL HEALTHCARE
AND DAVID KOPP'S MOTION FOR PARTIAL
SUMMARY JUDGMENT RE TORT CLAIMS - 3

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

> Upon arrival, ct presented alert and oriented w/ good eye contact and speech pressured at times. Conversation was notable for ct answering before DMHP finished questions and for exaggeration (e.g., scaling her anxiety at 1000 on a 10 point scale). Affect was anxious w/ congruent mood. Thought process was organized w/ no SI/HI, no perceptual disturbances, and fixation on not being safe. She demonstrated volitional control. She reported adequate sleep and eating breakfast and lunch today. She repeatedly said she needed to go to the hospital because she cannot be safe alone but she provided no reasons or examples why. Ct was closed to considering options shy of hospitalization. Several times she said, "I don't think I'll be able to talk soon" as if she might go (selectively?) mute. Her responses appeared to be volitional and secondary gains seeking (i.e., going to the hospital).

SOF 32, 34. Hospital staff reiterated that there was no reason for Langton to be at the hospital and said to Kopp that she "presented as manipulative." SOF 38. When Kopp assessed Langton, he found no evidence that she met the criteria for detainment under the ITA.[3] SOF 37. She was anxious, but not delusional, she demonstrated an ability to care for her basic needs, and her conduct was volitional. SOF 32, 34. Kopp consulted with his colleague a second time, who concurred with Kopp's assessment. SOF 37. Kopp also spoke with MVH staff again and they reported that they would request a police escort if Langton did not leave on her own. Kopp agreed to try again with Langton and explain the consequences of her not

---

[3] Kopp was not assessing Langton to determine whether MVH should admit her for voluntary psychiatric care. MVH does not provide in-patient psychiatric care, but even if it did, Kopp did not have admitting privileges at the hospital.

OKANOGAN BEHAVIORAL HEALTHCARE
AND DAVID KOPP'S MOTION FOR PARTIAL
SUMMARY JUDGMENT RE TORT CLAIMS - 4

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

leaving – namely, that the police could come and escort her off the premises.  SOF 39.

Kopp left MVH (at 6:30 p.m.), and MVH called the police.  SOF 41.  At some point after Kopp last saw Langton at MVH, she stopped responding to MVH staff.  Records indicate that she slid to the floor, urinated, and refuse to speak or cooperate.  SOF 43.  Kopp was not present and did not see this behavior.[4]  SOF 44.

The police arrived at MVH and when Langton would not respond or cooperate with them, they arrested her for trespassing.  SOF 46.  Langton resisted all attempts to remove her from the hospital.  SOF 49-50.  Officers offered to drive Langton home, but she did not respond to their questions about where she lived.  Accordingly, the police transported Langton to the Okanogan County Jail.  SOF 48.  Upon arrival at the jail, Ms. Langton was uncooperative, would not follow staff instructions, and would not communicate verbally with jail staff.  SOF 51.  Jail staff placed Ms.

---

[4] Plaintiff alleges Kopp did see this.  Even taking the facts in a light most favorable to plaintiff, conversion disorder is not enough to involuntarily commit someone and it is often not indicated or recommended.  *See, e.g.,* SOF 11 (DCR did not involuntarily commit Langton when she was at MVH, not moving or speaking); SOF 14.

OKANOGAN BEHAVIORAL HEALTHCARE
AND DAVID KOPP'S MOTION FOR PARTIAL
SUMMARY JUDGMENT RE TORT CLAIMS - 5

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Langton on a mattress on the floor of a holding cell where she remained through the night.

Between 1:30 and 2 p.m. the following day (about 19 hours later), jail staff noted that Ms. Langton had barely moved since the night before and had not eaten or drank anything since her arrival. SOF 54. At about 2 p.m., staff contacted OBHC and requested an ITA evaluation. SOF 55. Kopp was the on-call DCR and his role at the jail was defined (and limited) by the ITA. He arrived at the jail at approximately 2:45 p.m. Langton was on the floor of a cell (on a mat) and was malodorous from urine (having urinated on herself). SOF 61. Kopp attempted to speak with her, but she would not respond verbally. She did look at him when he spoke to her and demonstrated volitional control in an arm gravity test. *Id*. Kopp consulted with the jail staff who reported that Langton demonstrated a range of behaviors that indicated she was acting intentionally. SOF 58. He also noted that when Langton's breast was accidentally exposed, she did not react, possibly indicating that her presentation was due to conversion disorder and was not volitional. Kopp reviewed Langton's OBHC records and after meeting with jail staff and Langton, consulted with his supervisor about his clinical findings. SOF 64, 67.

OKANOGAN BEHAVIORAL HEALTHCARE
AND DAVID KOPP'S MOTION FOR PARTIAL
SUMMARY JUDGMENT RE TORT CLAIMS - 6

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Kopp concluded that Langton's presentation was more likely than not behavioral (i.e. volitional to achieve secondary gains)[5] and determined he did not have sufficient information that Langton, due to a mental health disorder, had lost cognitive or volitional control (i.e. gravely disabled).[6]  SOF 64-67.  Accordingly, Kopp did not have legal basis to detain her under the ITA at that time. However, he scheduled a follow up visit with Langton for the following day so that he could reevaluate her.  SOF 66.

Jail staff noted concerns to Kopp about Langton's physical health due to her lack of movement and Kopp recommended that staff follow their medical protocols to address any medical concerns they had, noting that Ms. Langton's medical needs

---

[5] Washington's Behavioral Health Administration defines "volitional function" as "the capacity to exercise restraint or direction over one's own behavior; the ability to make conscious and deliberate decisions; and of acting in accordance with one's reasoned decisions or choices."

[6] Plaintiff alleges Langton was experiencing an episode of conversion disorder and was unable to move or speak.  The experts disagree on whether it is even possible to know what was going on in Langton's mind at the time, but the Court need not reach a conclusion on whether Langton was acting volitionally or not to grant summary judgment.

OKANOGAN BEHAVIORAL HEALTHCARE
AND DAVID KOPP'S MOTION FOR PARTIAL
SUMMARY JUDGMENT RE TORT CLAIMS - 7

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

were outside his role (or abilities) as a DCR. SOF 70, 71. Jail staff did exactly that. At 3:40 p.m., approximately 10 to 20 minutes after Mr. Kopp completed his assessment, jail staff contacted the chief deputy and reported that Langton did not appear to be fit for jail. SOF 77. The chief deputy instructed staff to contact the court, which staff did at 3:45 p.m., requesting an order to allow Langton's release. The court granted the request and at 3:58 p.m., jail staff called for an ambulance to transport Ms. Langton to MVH. The ambulance arrived at the jail at about 4:10 p.m. *Id*. Langton's vital signs at that time were within normal limits, SOF 78, but when she was assessed at the hospital about 30 minutes later, she was no longer stable. SOF 79. Her blood oxygen was low, she was sweating, and she had signs of cyanosis (bluish discoloration of the skin). *Id*.

MVH suspected Ms. Langton had a pulmonary embolism and had her transported to Central Washington Hospital for acute treatment, where she passed away the following day. SOF 79-80. An autopsy determined Langton died from hypoxic encephalopathy due pulmonary embolism with early pneumonia. SOF 81. According to plaintiff's pathologist, Dr. Judy Melenek, Langton developed the fatal blood clot and pneumonia at some point during her period of immobility at the jail.[7]

---

[7] OBHC and Kopp dispute that it is possible to know when the clot formed; however, the Court need not reach that conclusion on summary judgment.

OKANOGAN BEHAVIORAL HEALTHCARE AND DAVID KOPP'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE TORT CLAIMS - 8

SOF 82. Dr. Melenek could not state with specificity when the clot formed, but opined that it would have been "hours" before her release. Similarly, Dr. Melenek testified that Langton's pneumonia developed hours before she arrived at MVH on March 24. Dr. Melenek opined that although she cannot precisely state the point of no return, had Langton received medical care within 1 to 2 hours of arriving at the jail, she (Langton) would not have perished. *Id*.

### C. Plaintiff's claims.

Plaintiff asserts wrongful death and survival claims against Kopp and OBHC, alleging Kopp was negligent and OBHC is vicariously liable for his negligence.[8] She also alleges general negligence and medical malpractice claims. ECF No. 154 at 21-24.

### III. ARGUMENT AND AUTHORITY

### A. Summary judgment standard.

A court may grant summary judgment on any claim or part of a claim in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there

---

[8] They also assert claims under 42 U.S.C. § 1983, which are currently before this Court on a separate motion for summary judgment.

OKANOGAN BEHAVIORAL HEALTHCARE AND DAVID KOPP'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE TORT CLAIMS - 9

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In other words, plaintiff cannot rely on speculation or conjecture to get past summary judgment, which is all she has here.

**B.      Plaintiff's negligence claims must be dismissed because the ITA immunizes DCRs from liability.**

DCRs are tasked with the impossible job of predicting the unpredictable and making decisions that profoundly affect and individual's liberty rights, all without the benefit of foolproof objective testing. Unlike, for example, a broken arm that shows up on an x-ray, there is no way to fully know what is going on in someone's head. The ITA recognizes this and RCW 71.05.120(1) states that no DCR or agency:

> shall be civilly or criminally liable for performing duties pursuant to this chapter with regard to the decision of whether to admit, discharge, release, administer antipsychotic medications, or detain a person for evaluation and treatment: PROVIDED, that such duties were performed in good faith and without gross negligence.

*See also Jackson v. City of Mountlake Terrace*, 2017 WL 841751 at *5 (W.D. Wash. March 3, 2017).

Gross negligence is "substantially and appreciably greater than ordinary negligence." *Id.* Bad faith requires a conscious doing of wrong, through ill or

OKANOGAN BEHAVIORAL HEALTHCARE
AND DAVID KOPP'S MOTION FOR PARTIAL
SUMMARY JUDGMENT RE TORT CLAIMS - 10

fraudulent motives. *Id.* (citing Spencer *v. King County*, 692 P.2d 874, (Wash. Ct. App. 1984), *overruled on other grounds by Frost v. Walla Walla*, 724 P.2d 1017 (Wash. 1986)).

Here, plaintiff sets forth various negligence theories against Kopp and OBHC, all of which are premised on Kopp's finding that he could not involuntarily commit Langton on March 23 and 24, 2018. ECF No. 154 at 21-24. In other words, the claims directly implicate the ITA, which means they invoke the ITA's immunity provision, and must be dismissed. *Poletti v. Overlake Hosp. Medical Ctr*, 175 Wn. App. 828, 834 (2013) (plaintiff could not hold defendant "liable for failing to detain [decedent] without invoking the immunity provision of RCW 71.05.120 because the only authority under which [defendant] could have detained [her] was under the involuntary treatment act.").

There is no allegation the either Kopp or OBHC acted in bad faith nor did plaintiff plead a gross negligence claims. Because Kopp and OBHC are immune from liability, plaintiff's wrongful death, survival, medical negligence, and ordinary negligence claims must be dismissed.

## C. Plaintiff did not plead and cannot prove gross negligence.

There is no gross negligence claim here, but even if there were, plaintiff cannot establish gross negligence, which requires proof that the defendant (1) had a duty; (2); substantially breached that duty by failing to act with even slight care;

OKANOGAN BEHAVIORAL HEALTHCARE AND DAVID KOPP'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE TORT CLAIMS - 11

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

which (3) <u>caused</u>; (4) plaintiff damages. *Harper v. State*, 192 Wn.2d 328, 340-41 (2018) (citations omitted). In examining gross negligence on summary judgment, the court should (1) specifically identify the relevant failure alleged by the plaintiff and then (2) determine whether the plaintiff presented substantial evidence that the defendant failed to exercise slight care under the circumstances presented and, if applicable, the actions that the defendant did take. *Harper*, 192 Wn.2d at 343. To survive summary judgment in a case where the defendant is immune from liability unless he or she was grossly negligent, the plaintiff must provide substantial evidence of the defendant's "seriously negligent acts or omissions." *Id*. at 345.

As explained below, plaintiff cannot establish duty, breach, or causation, which defeats any late-pled gross negligence claim. Likewise, there is no evidence that Kopp bore ill will toward Langton, had fraudulent intent, or consciously committed some wrongdoing. At most, plaintiff nitpicks various steps Kopp allegedly took on March 23 and 24, but she falls far short of demonstrating gross negligence.

**D. Kopp owed no legal duty to Langton.**

 **1. The ITA did not create a duty-imposing special relationship between Kopp and Langton.**

DCRs do not have a legal duty beyond their statutory authority and that authority is "limited to conducting an investigation and filing a petition for detention if…called for." *Ghodsee v. City of Kent*, 21 Wn. App. 762, 770 (2022).

OKANOGAN BEHAVIORAL HEALTHCARE
AND DAVID KOPP'S MOTION FOR PARTIAL
SUMMARY JUDGMENT RE TORT CLAIMS - 12

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Further, here, to establish a duty, plaintiff would have to show that the ITA provides for medical diagnoses by non-medical providers like Kopp; grants a DCR the ability to force a hospital like MVH to admit a patient it finds does not meet its admission criteria; or allows the DCR to command jail staff on what to do when faced with medical concerns about an individual in its custody. It goes without saying that the ITA provides for none of these. *See generally* Chapter 71.05 RCW.

Apparently recognizing this, plaintiff tries to plead that Kopp and OBHC had a special "protective" relationship with Langton that required them to somehow protect her from developing a blood clot. For a special relationship to exist between a mental health professional and an induvial, there must be a "definite, established, and continuing" relationship between the provider and the person. *Id*. (citing *Konicke*, 16 Wn. App. 2d at 138). Our courts have held that the limited interactions between a DCR and a person being investigated are not "definite, established, and continuing" and do not create a special relationship sufficient to impose a legal duty:

> Based on the statutory role of DMHPs, now DCRs, and the actions of the specific DMHPs at issue here, there was no continuing, definite, and established relationship giving rise to a legal duty. The DMHP-potential detainee relationship is more akin to a patient and emergency room provider … or a client and mental health provider in the context of an initial assessment….

*Godsee* (citations omitted).

Kopp was not Langton's therapist and he did not provide her with mental health treatment. At most, he provided her with acute crisis services at MVH, which

OKANOGAN BEHAVIORAL HEALTHCARE AND DAVID KOPP'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE TORT CLAIMS - 13

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

at best, is akin to a patient and an emergency room provider.  Otherwise, his role was limited to conducting an ITA investigation, which does not give rise to a duty-creating special relationship.

> **2.     Kopp owed no duty under RCW 7.70 because DCRs do not have provider/patient relationship.**

Medical malpractice claims do not exist unless there is a physician/patient relationship. *Konicke v. Evergreen Emergency Services, P.S.*, 16 Wn. App.2d 131, 138 (2021).   Plaintiff's RCW 7.70 claim fails here because here is no physician/patient relationship between a DCR and the individuals they investigate; thus, plaintiff does not have a valid malpractice claim against Kopp or OBHC.

### E.     Kopp's did not breach a (non-existent) duty to Langton because he exercised more than slight care.

Langton died from a medical condition that Kopp could not predict, diagnose, prevent, or treat.  MVH could do that, but it released Langton on March 23, 2018 because there was no medical reason to admit her – and it did so after she was on its floor, in her urine, not speaking or moving. Kopp could not have compelled MVH to take a different course of action nor was he better qualified that the medical staff to determine Langton's medical risks.

At the jail, Kopp did not have the authority or ability to provide Langton with medical care nor could he dictate that jail staff release her for medical release (or release her at all). He was limited to determining whether Langton was gravely

OKANOGAN BEHAVIORAL HEALTHCARE
AND DAVID KOPP'S MOTION FOR PARTIAL
SUMMARY JUDGMENT RE TORT CLAIMS - 14

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

disabled and he could only do that if he found he had sufficient evidence to support taking away her liberty rights under the ITA. Plaintiff criticizes Kopp's conclusion and claims his investigation was inadequate, but she cannot dispute that Kopp consulted with other mental health professionals, consulted with MVH medical staff, met with Langton (in the jail and at MVH), spoke with her daughter, and consulted with jail staff. This does not demonstrate an absence of slight care.

**F.      Kopp's did not cause Langton's death.**

To be liable for negligence, a defendant's act must be a proximate cause of the plaintiff's injury. *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998). An act generally is a proximate cause of an injury if it produces the injury. *Id*. at 519, 951 P.2d 1118. However, if a new, independent act breaks the chain of causation, it supersedes the original act, which thus is no longer the proximate cause of the injury. *Id.* Further, a plaintiff must rely on more than the fact of an injury to prove causation. *Little v. Countrywood Homes*, 132 Wn. App. 777, 781 (2006). Mere speculation as to the cause of injury is insufficient to establish liability. *Id*. at 780. "It is not enough that the defendant's conduct 'might have' or 'possibly did' cause the injury" *O'Donaghue v. Riggs*, 73 Wn.2d 814, 824 (1968). The plaintiff must affirmatively establish that it was the defendant's action or inaction – and the defendant's alone – that caused the subject injury:

> If there is nothing more tangible to proceed upon than two or more conjectural theories under one or more of which a defendant would be

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

liable and under one or more of which a plaintiff would not be entitled to recover, a jury will not be permitted to conjecture how the accident occurred.

*Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 377 (1999).

In *Little*, supra, the plaintiff's established that the defendant had committed numerous safety violations; however, he could not say how he was injured or how those violations caused him to fall. *Id*. at 780-81. Accordingly, the court dismissed his claims on summary judgment. *Id*. at 784.

### 1. Not committing Langton at MVH did not cause her death because her confinement at the jail superseded that clinical decision.

"Whether an act may be considered a superseding cause sufficient to relieve a defendant of liability depends on whether the intervening act can reasonably be foreseen by the defendant; only intervening acts which are not reasonably foreseeable are deemed superseding causes." *Cramer v. Dep't of Highways*, 73 Wn. App. 516, 520–21 (1994) (citing *Anderson v. Dreis & Krump Mfg. Corp.,* 48 Wn. App. 432, 442, (1987)).

Here plaintiff appears to allege that Kopp should have known that Langton was about to experience a conversion disorder event on March 23 and had he recognized that, he could have committed her, she would not have been arrested, the jail would not have failed to provide medical care, and Langton would not have died. Plaintiff cannot prove that Kopp's decision not to commit Langton at MVH caused her pulmonary embolism because the jail was a superseding, interceding actor. To

OKANOGAN BEHAVIORAL HEALTHCARE AND DAVID KOPP'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE TORT CLAIMS - 16

the extent plaintiff can establish that Langton formed a blood clot at the jail and that the jail allowed this to happen, the jail's purported failure to monitor Langton or seek earlier medical intervention was in no way foreseeable to Kopp. The jail has 24-hour access to an on-call physician, employs medical corrections officers, and is required to provide adequate medical care for its inmates. Kopp could not have known that the jail would not follow standard care practices for Langton (if that is what happened). He could not have known that it would not formally book Langton into the jail, which meant that it did not conduct a fit for jail assessment. To the extent any of this resulted in Langton forming the fatal blood clot, and it may not have, it is the jail, not Kopp who caused her death.

**2.** **There is no relationship between Kopp's ITA assessment at the jail and Langton's death.**

There is also no causal link between Kopp's determination that he could not involuntarily commit Langton on March 24 and her death. According to plaintiff's own expert, Langton's fatal blood clot took many hours to form, which means it did not form in the 10-20 minutes between Kopp's departure from the jail and the jail's decision to initiate Langton's release. There is simply nothing Kopp could have done at the jail that would have changed Langton's outcome. And even if he had determined that Langton was gravely disabled at the jail, she would not have been released any sooner that she was. If anything, that decision would have delayed her reaching MVH.

OKANOGAN BEHAVIORAL HEALTHCARE
AND DAVID KOPP'S MOTION FOR PARTIAL
SUMMARY JUDGMENT RE TORT CLAIMS - 17

Plaintiff previously argued that Kopp was required to request the jail release Langton and transport her for medical clearance (demonstrating fitness for involuntary commitment) when he first received the call at 2 p.m. on March 24.  This is nothing more than creative lawyering and is not only factually baseless, it does not overcome plaintiff's expert's opinions.  Langton arriving at the hospital an hour or even two hours earlier than she did would not have made any difference.  Moreover, Kopp was not required to, and in fact, could not, compel the jail to release Langton from the jail without first determining that there was sufficient evidence of grave disability.

RESPECTFULLY SUBMITTED this 2nd day of January, 2024.

KELLER ROHRBACK L.L.P.

By *s/ Holly E. Lynch*
    Holly E. Lynch, WSBA #37281
    1201 Third Avenue, Suite 3200
    Seattle, WA  98101
    Telephone: (206) 623-1900
    Facsimile: (206) 623-3384
    Email:  hlynch@kellerrohrback.com

Attorneys for Defendants Okanogan Behavioral Healthcare and David and Jane Doe Kopp

OKANOGAN BEHAVIORAL HEALTHCARE AND DAVID KOPP'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE TORT CLAIMS - 18

**CERTIFICATE OF SERVICE**

I hereby certify that on the below date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF System. The NEF for the foregoing specifically identifies recipients of electronic notice.

DATED this 2nd day of January, 2024.

*s/ Keeley Engle*
Keeley Engle, Legal Assistant
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
Email: kengle@kellerrohrback.com

4844-9442-2510, v. 2

OKANOGAN BEHAVIORAL HEALTHCARE AND DAVID KOPP'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE TORT CLAIMS - 19